IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **LARRY E. HAMBY,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. CIV-10-158-SPS |
| ) | |
| **MICHAEL J. ASTRUE,** ) | |
| **Commissioner of the Social** ) | |
| **Security Administration,** ) | |
| ) | |
| **Defendant.** ) | |

## OPINION AND ORDER

The claimant Larry E. Hamby requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons set forth below, the Commissioner's decision is REVERSED and REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations

implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts

---

[1] Step One requires the claimant to establish that he is not engaged in substantial gainful activity. Step Two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born August 5, 1962, and was forty-seven years old at the time of the administrative hearing (Tr. 22, 114). He completed the tenth grade (Tr. 23), and has been employed as a laborer, mechanic's helper, farm worker, and fast food worker (Tr. 47-48). The claimant alleged inability to work since June 1, 2008,[2] due to coronary artery disease, leg pain, and shortness of breath. (Tr. 114, 144, 170).

## Procedural History

On July 3, 2008, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85 (Tr. 97-105). His applications were denied. ALJ Edward L. Thompson conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated October 29, 2009. (Tr. 10-18). The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that

---

[2] At Step 1, the ALJ determined that the claimant had engaged in SGA on more than one occasion after his June 1, 2008 alleged onset date, but that the claimant had not engaged in SGA after September 1, 2009. The claimant is not appealing this determination.

-- 3 --

the claimant retained the residual functional capacity (RFC) to perform sedentary work, *i. e.*, he could lift/carry ten pounds frequently, stand/walk two hours in an 8-hour workday, and sit 6 hours in an 8-hour workday. (Tr. 15-16). The ALJ concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled under Rules 201.18, 201.19, and 201.20 of the Medical-Vocational Guidelines, *i. e.*, "the Grids." (Tr. 16-17).

## Review

The claimant's sole contention on appeal is that the ALJ erred by using the Grids to find him disabled. The Court finds this contention persuasive.

According to the medical evidence, the claimant had the severe impairments of mitral regurgitation, cardiomegaly, cardiac disrhythmias, tobacco use disorder, coronary artery disease, hypercholesterolemia, and a history of a mild ventricular anteroseptal infarct. (Tr. 14). The claimant began experiencing chest pains in June 2008, and was treated by Drs. Mark Newey and Ruben Sunga. He was hospitalized several times in 2008 and 2009, and testing revealed that he had, inter alia, mild cardiomegaly, no acute abnormalities, coronary artery disease, a 56% left ejection fraction, mild tricuspid regurgitation, hypercholoesterolemia. (Tr. 254, 303, 325, 341). On March 24, 2009, Dr. Sunga noted that the claimant reported that he was doing well and tolerating his medications, but that he occasionally experienced chest pains that lasted a few minutes and spontaneously resolved. Dr. Sunga continued the claimant on his medications, and advised him to stop smoking, then asked for a follow-up visit in six months. (Tr. 491-

93).  The claimant again returned to the emergency room in August 2009 with complaints of chest pain, but he was stabilized after being given two baby aspirin and nitroglycerin, and the notes state that the claimant believed he "got too hot yesterday."  (Tr. 526).

At the administrative hearing, the claimant testified that he had a heart blockage, and that he had experienced three heart attacks, but he had not undergone bypass surgery.  As part of this condition, he testified that he sometime suffered shortness of breath and had to take 15-minute breaks approximately twice a day.  (Tr. 26-27, 37).  He said that he also experiences numbness in his left arm "from the elbow down."  (Tr. 26).  He said that his heart was "thumping real hard" so that he could feel it through his chest at the hearing.  (Tr. 30).  He further testified that he was unable to do the work he had done in the past, but that his heart would not bother him if he had a job where he "sat down all the time," but he would still need to take the 15-minute breaks.  But he also stated that his heart sometimes bothers him when he is sitting still, which requires him to sit still and focus on breathing.  (Tr. 30-31).  He stated that he had been laid off from his most recent job ending August 30, 2009, but that he would still be working there if they had work for him.  (Tr. 35-36).

In his written opinion, the ALJ summarized the medical evidence, but made no mention of the claimant's hearing testimony.  He noted the criteria set forth in Soc. Sec. Rul. 96-7p, then concluded that "[t]here is no indication that he suffers from the side effects of medication that would have a significant effect upon his ability to engage in work activity.  There is also no indication that the claimant's ability to carry on the

activities of daily living has been eroded to the extent that he would be precluded from engaging in all work activity. The claimant may experience some pain and discomfort; however, the [ALJ] is not persuaded that his pain and discomfort are at a disabling level of severity, duration, and intensity as the claimant alleges." (Tr. 15). The ALJ then found that the claimant was not disabled according to "the grids," Medical-Vocational Rules §§ 201.18, 201.19, and 201.20.

"The grids" are rules promulgated by the Commissioner for determining disability based on a claimant's RFC category, age, education and work experience. *See Channel v. Heckler,* 747 F.2d 577, 579-80 & n.3 (10th Cir. 1984) (per curiam). "An ALJ may not rely conclusively on the grids unless he finds (1) that the claimant has no significant nonexertional impairment, (2) that the claimant can do the full range of work at some RFC level on a daily basis, and (3) that the claimant can perform most of the jobs in that RFC level. Each of these findings must be supported by substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1488 (10th Cir. 1993). Thus, use of the grids is inappropriate when a claimant has a nonexertional impairment, unless the ALJ can support a finding that the nonexertional impairment is insignificant. *Id.* at 1490-91; 20 C.F.R., pt. 404, subpt. P, app.2, § 200.00(e). If an ALJ cannot rely conclusively on "the grids," he "must cite examples of occupations or jobs the individual can do and provide a statement of the incidence of such work in the region where the individual lives or in several regions of the country." Soc. Sec. Rul. 96-9p, 1996 WL 374186 at *5.

The claimant contends that the ALJ erred in applying "the grids" to determine he was disabled because he had a significant nonexertional impairment, *i. e.*, pain. "Pain, even if not disabling, is still a nonexertional impairment to be taken into consideration, unless there is substantial evidence for the ALJ to find that the claimant's pain is insignificant." *Thompson*, 987 F.2d at 1488, *citing Ray v. Bowen*, 865 F.2d 222, 225 (10th Cir. 1989) and *Gossett v. Bowen*, 862 F.2d 802, 807-08 (10th Cir. 1988). In assessing allegations of pain, an ALJ "must consider (1) whether Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a 'loose nexus' between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling." *Musgrave v. Sullivan*, 966 F.2d 1371, 1375-76 (10th Cir. 1992), *citing Luna v. Bowen*, 834 F.2d 161, 163 (10th cir. 1987).

In this case, there was objective medical evidence that the claimant has a chronic heart condition causing pain. The ALJ thus was required to consider his assertions of pain and the extent to which they were disabling. *See Winfrey v. Chater*, 92 F.3d 1017, 1020 (10th Cir. 1996); *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995). The ALJ specifically found that the claimant's pain was not disabling because he had a normal heart rhythm, normal breath sounds, a normal range of motion, no neurological deficits, no mental impairments, and no clubbing, cyanosis or erythema in his extremities. (Tr. 15). But the ALJ failed to even mention the claimant's testimony, and instead reaches a boilerplate conclusion that the "claimant's statements concerning the intensity,

persistence, and limiting effects of these symptoms are not entirely credible." (Tr. 15). *See Hardman v. Barnhart*, 362 F.3d 676, 679 (10th Cir. 2004) ("[B]oilerplate language fails to inform us in a meaningful, reviewable way of the specific evidence the ALJ considered in determining that claimant's complaints were not credible."), *citing Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1239 (10th Cir. 2001); *Carpenter v. Astrue*, 537 F.3d 1264, 1268 (10th Cir. 2008) ("The ALJ's purported pain analysis is improper boilerplate because he merely recited the factors he was supposed to address and did not link his conclusions to the evidence or explain how Mrs. Carpenter's repeated attempts to find relief from pain, and all the drugs she has been prescribed for pain, resulted in a conclusion that she is unlimited in any regard by pain or the side effects from her pain medication.") [citations omitted].

The ALJ further failed to account for the claimant's pain (disabling or otherwise) in formulating his RFC and determining what work, if any, was available given his level of pain. *See, e. g., Harrison v. Shalala*, 28 F.3d 112, 1994 WL 266742, at *5 (10th Cir. 1994) (per curiam) (unpublished table opinion) ("If the ALJ finds that plaintiff's pain, by itself, is not disabling, that is not the end of the inquiry. The [Commissioner] must show that jobs exist in the national economy that the claimant may perform *given the level of pain [he] suffers*.") [citation omitted]. This would ordinarily require the opinion of a vocational expert, *see, e. g., id.* at *5, but the questions posed here to the vocational expert addressed nothing but the claimant's past work.

Because the ALJ failed to properly account for the claimant's pain, the

Commissioner's decision is reversed and the case is remanded to the ALJ for further analysis. Upon proper analysis, the ALJ should then re-determine what work, if any, the claimant can perform and ultimately whether he is disabled.

## Conclusion

The Court hereby FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. Accordingly, the decision of the Commissioner is REVERSED and REMANDED for further proceedings.

**DATED** this 16th day of September, 2011.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma